[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-10277

Non-Argument Calendar

_____

STANISLAV ZALEZHNEV,

Plaintiff-Appellant,

*versus*

WONDERWORLD MONTESSORI ACADEMY
CORPORATION,
Wonderland Montessori Academy Corporation
f.k.a. Wonderland Montessori Academy Corporation,

Defendant-Appellee.

—————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:19-cv-60268-RAR

—————————————

Before LAGOA, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Stanislav Zalezhnev appeals the district court's order granting Wonderworld Montessori Academy Corporation's (WMA) motion for summary judgment on his claims of discrimination, harassment, and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101. Zalezhnev contends the district court erred in granting summary judgment to WMA on his discrimination claim by finding he had not shown he had a disability and was a qualified individual under the ADA. He also asserts the district court erred in granting summary judgment to WMA on his retaliation and harassment claims by finding he was not disabled and he otherwise failed to establish *prima facie* claims. After review,[1] we affirm the district court.

---

[1] We review a district court's grant of summary judgment *de novo*. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012). Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## I. BACKGROUND

Zalezhnev was employed for three months as a maintenance and security guard at WMA. He began his employment in October 2017. Zalezhnev signed a document stating he received the employee handbook and understood he was responsible for reading its contents. The employee handbook contained the job description of each position at WMA. Under the "Security" position, the physical requirements include "physical exertion to manually move, lift, carry, pull, or push heavy objects or materials," and "stooping, kneeling, crawling, bending, turning, and reaching." The "Maintenance" position included both operating equipment and machinery as necessary and maintaining the school property. Despite signing a form stating he received the employee handbook, Zalezhnev asserts he never received it, but does remember signing a number of forms when he began his position. Zalezhnev asserts he understood that he was hired to work primarily as a security person.

During his three months in his position at WMA, Zalezhnev used a leaf blower, picked up tree debris and garbage, shampooed the carpets in the classrooms with heavy equipment, cleaned the animal cages, ran errands, and assisted parents and children at arrival and dismissal by operating non-motorized school gates that required pushing and pulling. Zalezhnev alleges on multiple occasions he told Camilla Rovshan, the President and Owner of WMA, that he suffered from a physical condition that "impair[ed] his ability to walk, push, pull, bend and lift heavy objects."

Zalezhnev had surgery in 2014 to address his cervical cord compression and myelopathy. Zalezhnev's condition derives from the "fusion of his neck (cervical) bones" which causes him to suffer from numbness in one of his legs. Because of this condition, Zalezhnev alleges he had difficulty using the leaf blower, operating the large carpet cleaner, lifting heavy items, and pushing and pulling the non-motorized school gates. Zalezhnev offered to provide medical documents from his surgery in order to provide Rovshan with proof of his condition, but he contends she refused to review his medical documentation.

Zalezhnev asserts that after he told Rovshan of his physical impairments, Rovshan threatened to cut his hours and ridiculed him by asking him "what good are you for?" Similarly, on one occasion, Zalezhnev told Rovshan his back hurt while cleaning the exterior trash, and Rovshan threatened to fire him, but did not do so then. On January 12, 2018, Zalezhnev told Rovshan he had a doctor's appointment after work to obtain a physical. Subsequently, an argument ensued between the parties and Zalezhnev was fired.

## II. DISCUSSION

### A. ADA Discrimination

The ADA provides that no employer shall discriminate against a qualified individual on the basis of disability in discharging its employees. *See* 42 U.S.C. § 12112(a). "To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that:

20-10277                Opinion of the Court                5

(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Holly v. Clairson Indus., LLC*, 492 F.3d 1247, 1255–56 (11th Cir. 2007).

The district court did not err in granting summary judgment to WMA because Zalezhnev failed to establish a *prima facie* discrimination claim. The ADA defines a "disability" as a physical or mental impairment that "substantially limits" one or more major life activities of an individual. 42 U.S.C. § 10212(1). WMA concedes that Zalezhnev has a physical impairment from his cervical fusion.

As a result, the issue is limited to whether Zalezhnev's cervical fusion resulted in impairments that "substantially limited" his major life activities. "Major life activities" include such things as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1222 (11th Cir. 2000). An impairment is considered to "substantially limit" one of these activities if the disability renders the individual unable to perform the activity or significantly restricts its performance compared to the average person. *Id.*

Zalezhnev did not present any medical documentation of his cervical fusion; instead, WMA submitted records from his hospitalization in 2014, which stated the procedure went well and his postoperative course was unremarkable. No other medical records were submitted. While Zalezhnev asserted he was having

difficulty performing physical tasks, his own deposition testimony undermined any restriction as he stated that he performed the duties of the position despite the pain and never refused to perform them. Consequently, there was a dearth of record evidence showing the severity of Zalezhnev's impairment and that his fusion made him unable to perform an activity or significantly restricted his performance compared to an average person. *See id.*

Further, the district court did not err in concluding Zalezhnev did not establish he was "regarded as" disabled. *See* 42 U.S.C. § 12102(1)(C) (providing a person may establish a disability by being "regarded as having such an impairment"). A plaintiff is regarded as having an impairment if he establishes he has been subjected to a prohibited action because of an actual or perceived physical impairment whether or not the impairment limits or is perceived to limit a major life activity. *Id.* § 12102(3)(A). Zalezhnev's own affidavit mentions instances where he complained to Rovshan about the pain he was experiencing in performing his duties, she told him to continue, and he did. Zalezhnev stated he was fulfilling his duties despite his pain. Zalezhnev has provided no evidence beyond his own conclusory statements that he was "regarded as" disabled.

Zalezhnev also cannot show that he is a "qualified individual," 42 U.S.C. § 12111(8) (providing a plaintiff must show he is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds"). "Essential

functions" are the fundamental job duties of a position that an individual with a disability is actually required to perform. 29 C.F.R. § 1630.2(n)(2)(1). The ADA directs the district court to consider the employer's judgment of what functions are essential including factors such as the amount of time spent performing the tasks, the consequences of not performing the function, and a written job description. *Id.* § 1630.2(n)(3). The employee handbook identified both maintenance of the property and the use of machines as necessary functions of the maintenance position, and identified several physical requirements of the security position. The district court reasonably concluded these job descriptions encompassed maintaining clean school grounds and operating the non-motorized gates at arrival and dismissal. *See* 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3). Moreover, WMA submitted Zalezhnev's application for the security/maintenance position, his acknowledgement of the employee handbook, and his deposition admission that his duties included opening and closing the gates. As such, the district court did not err in finding that maintaining the grounds and opening the gates were essential functions of Zalezhnev's position. *See* 29 C.FR. § 1630.2(n).

Lastly, the district court did not err in concluding that Zalezhnev never made a reasonable accommodation request. 42 U.S.C. § 12112(b)(5)(A) (providing discrimination under the ADA also includes the failure to make a reasonable accommodation to the known physical or mental limitations of the individual); *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d

1361, 1364 (11th Cir. 1999) (explaining the duty to provide a reasonable accommodation is not triggered under the ADA unless a specific demand for an accommodation has been made by the plaintiff).  Throughout his filings, Zalezhnev never identified any accommodation request made to WMA that would have made him better able to perform his duties, much less an instance where he requested an accommodation.[2]    Rather, Zalezhnev only references informing Rovshan of his pain, not that he requested help, assistance, or some other form of alteration to his job duties. Moreover, he testified during his deposition that he "didn't think that accommodations [were] available" and did not "see any opportunity for help."  Without making a request, WMA was not obligated to offer an accommodation or have an interactive process.  *See Gaston Inc.*, 167 F.3d at 1364; *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285-86 (11th Cir. 1997) (stating an employer is not liable where they made reasonable efforts to communicate with the employee and to provide accommodations based on the information it possessed, and where the employee's actions caused the breakdown in the interactive process).  Accordingly, we affirm the district court's grant of summary judgment on Zalezhnev's discrimination claim.

---

[2] Zalezhnev abandoned any argument that the motorization of the gate could be a reasonable accommodation by raising this argument for the first time on appeal.  *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (holding an issue not raised in the district court and raised for the first time on appeal will not be considered).

B.  *ADA Harassment and Retaliation*

The district court also did not err in granting summary judgment to WMA on Zalezhnev's harassment and retaliation claims.  We have recognized that different forms of discrimination claims may not be repackaged or "reclothe[d] into other claims." *Lucas v. W. W. Grainger, Inc.*, 257 F.3d 1249, 1261 (11th Cir. 2001) (recognizing that Lucas's asserted adverse action for both his retaliation and failure-to-accommodate claims was identical and failure in one was fatal to the other); *see also Stewart*, 117 F.3d at 1288 ("[T]he acts Stewart describes relate directly to her 'reasonable accommodation' discrimination claim, not her retaliation claim, and accordingly provide no basis for denying summary judgment on this issue.").  The district court did not err in concluding the factual support for all three of Zalezhnev's claims was identical, and thus his harassment and retaliation claims failed because he failed to establish he was disabled under the ADA.  *See* 42 U.S.C. § 12112(a).

While we have not addressed whether a harassment claim is cognizable under the ADA, in the context of Title VII, to establish a valid harassment claim based on a supervisor's conduct, the plaintiff must show that (1) he belongs to a protected group, (2) he has been subject to unwelcome harassment, (3) the harassment was based on a protected characteristic of the employee, (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment, and (5) the employer was responsible for such environment.  *Mendoza v. Borden, Inc.*, 195

F.3d 1238, 1245 (11th Cir. 1999) (en banc).  Zalezhnev failed to demonstrate his supervisor's conduct reached the level of severity and pervasiveness to constitute harassment.  *See Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (Title VII) (explaining to determine severity and pervasiveness, we look at the totality of the circumstances and consider the conduct's: (1) frequency; (2) severity; (3) threatening or humiliating nature, or mere offensiveness; and (4) unreasonable interference with the employee's job performance).  Zalezhnev was employed for about three months with WMA, and during that time he recounts a number of instances where Rovshan made threatening, "ridicul[ing]" or negative remarks about him.  However, Zalezhnev provided little evidence of their actual frequency and, based on his statement that he performed his duties and Rovshan's statement that he was a good worker, the comments did not appear to unreasonably interfere with his performance.  *See Miller*, 277 F.3d at 1276.  Accordingly, the district court did not err in granting summary judgment to WMA on Zalezhnev's harassment claim.

Likewise, the district court did not err in granting summary judgment on Zalezhnev's retaliation claim. To establish a *prima facie* retaliation claim under the ADA a plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal relationship between the action and his protected expression. *Lucas*, 257 F.3d at 1260.   The district court correctly stated that Zalezhnev did not identify a specific form of protected expression

on which he based his retaliation claim. For the first time on appeal, he contends that when he told Rovshan he had pain and difficulty pushing, pulling, and bending, she retaliated against him by threatening to cut his hours and fire him, and then eventually fired him. Even treating that argument as preserved, the only adverse action substantiated by the record is his termination, and Zalezhnev stated in his deposition that his termination was due to someone replacing him and not because of his disability or an accommodation request. Thus, the district court did not err in granting summary judgment to WMA on Zalezhnev's harassment and retaliation claims. Accordingly, we affirm.

## III. CONCLUSION

The district court did not err in granting summary judgment to WMA because Zalezhnev did not establish that he had a disability, was a qualified individual, or requested an accommodation. Because he based his harassment and retaliation claims on the same faulty disability allegations, the district court likewise did not err in granting summary judgment on those claims. Additionally, he failed to establish *prima facie* cases of harassment or retaliation. Accordingly, we affirm the district court.

**AFFIRMED.**